The opinion of the Court was delivered by
O’Neall, C. J.
We are of opinion that the plaintiff is not entitled to recover.
The second section of the Act of 1840, 11 Stat. 100, 101, provides, that “ every bank which shall suspend the payment of current coin for its notes, or which shall declare a determination to suspend, or refuse payment of its notes, according to their legal obligation, in current coin, shall become liable to pay to the State of South Carolina, at the expiration of every month after such suspension or declaration, a sum of money at the rate of five per centum per annum upon the whole amount of its notes which shall have been issued in circulation at the commencement of the said month, and shall continue- to pay at the same rate, at the end of every month until the said bank shall revoke its declaration, and shall lawfully redeem its notes, according to their legal obligation: the said sum to be recovered by action of debt in any court of competent jurisdiction.” Under this clause, it is necessary first to decide what is the character of the provision, “shall be liable to pay” five per cent, per month during the months of suspension? I have no doubt, it is a penalty. It is a sum to be paid, in the event of failing to perform a legal duty. That is beyond all doubt a penalty. 1 It enforces a duty, and punishes the non-performance. This is plainly a penalty. The case of the State vs. Cole, 2 McC. 55, declared a matter of the same analogous character, a penalty. So in Burger, Tax Collector, ads. The State, 1 McMull. 410, I held that a sum imposed on a broker for the purchase or sale of bullion, specie, bank-notes, &c., *615 “for any bank or company out of the State,” so large as to amount to prohibition, although called a tax, was yet in fact a penalty. The sum here is imposed in prohibition, and is a plain penalty.
The defendants respectively incurred the penalty, by suspending, 12th October, 1857; they paid the penalties for two months. The penalties now claimed are for eight days, from the 12th to the 20th December. On the 20th of December, 1857, the Legislature passed an Act, 12 Stat. 680, which in its first section provided, that “the operation of the second section of the Act of 1840,” above cited and set forth, “be, and the same is hereby suspended, until the first day of January, 1859, on the express condition, that no execution, issued upon judgments already obtained, or hereafter tó be obtained, by any of the non-specie paying banks, shall be enforced, until such bank shall resume specie payments, provided, that each debtor, against whom the banks obtained judgment and issued execution thereon, shall pay to the banks to whom they may be so indebted, interest upon the whole amount of the judgment recovered, at the expiration of every sixty days from the passage of this Act, at the rate of seven per cent, per annum, and any debtor neglecting or refusing so to do, shall be deprived of the benefits of this Act: provided, that if the property of the debtor be sold under. an execution or executions of other creditors, the execution of the Bank shall be entitled to the same lien and payment as now provided' by law.”
It is objected, on the part of one of the Banks, that the Act passed 20th December, has relation back to the first day of the session, and that therefore for the eight days now sued for, there was no penalty incurred, as the law was suspended during that time. I think a little attention to the plain reading of the sixteenth section of the first Article of the Constitution, would have saved *616 tig the necessity of an opinion about this matter. The sixteenth section provides: “No bill or ordinance shall have the force of law, until it shall have been read three times, on three several days, in each house, has had the great seal affixed to it, and has been signed in the Senate house by the President of the Senate and Speaker of the House of Representatives.” This final ceremony, which is called “ratification,” took place on the 20th December; then it became a law, and not before.
The next question in this case is, what was the effect of suspension on the eight days for which the Ranks were unlawfully suspended? On the 30th January, 1858, demand was made upon the defendants for the penalties of eight days’ suspension, and actions were brought April, 1858.
I think suspension has the effect of a repeal during the period suspended. Until the 1st January, 1859, no claim could be made upon the Banks. For, during that time, the law could not be enforced. It was the'same as if it did not exist. The effect of a.repeal on a penalty incurred, before the repealing Act, is to discharge the penalty. This point has been so often adjudged, that it is only necessary to refer to Allen, qui tam, vs. Farrow, 2 Bail. 584, where the law was collected and remarked upon with the concurrence of the whole Court, by my much esteemed and regretted brother Martin.
The motion to set aside the verdicts and for a nonsuit in each of the cases, is granted.
Wabdlaw, J., concurred.
Johnstone, J., declined to give an opinion, as he was a stockholder in two of the Banks, i. e. The Farmers’ and Exchange Bank, and the People’s Bank.

Motion granted.